

**CLERK'S OFFICE
A TRUE COPY
Apr 02, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin**

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>records and information associated with certain cellular towers ("cell towers") and records generated by the cellular network that are in the possession, custody, and/or control of Verizon | )<br>)<br>)  Case No. 25-M-339 (SCD)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    4-16-25    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Stephen C. Dries    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    4-2-25. 1:35 pm                        */s/ Stephen C. Dries*
                                                                *Judge's signature*

City and state:    Milwaukee, Wisconsin            Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                        *Printed name and title*

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name(s) of any person(s) seized: |||

**Certification**

　　　　I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

*Executing officer's signature*

*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

This warrant applies to a Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates and times.

1. Location #1

    GPS Coordinates: 43.00932508789193, -87.9373239255281

    Date: October 7, 2024                Time: 4:10 a.m. (CST) to 4:50 a.m. (CST)

2. Location #2

    GPS Coordinates: 43.00958289735095, -87.93576192748301

    Date: December 2 - 3, 2024           Time: 11:30 p.m. (CST) to 12:20 a.m. (CST)

3. Location #3

    GPS Coordinates: 43.009049792507355, -87.94352197557707

    Date: December 10, 2024            Time: 2:10 a.m. (CST) to 2:50 a.m. (CST)

4. Location #4

    GPS Coordinates: 43.00892718673681, -87.94297268238635

    Date: December 10, 2024            Time: 2:10 a.m. (CST) to 2:50 a.m. (CST)

## ATTACHMENT B

### Items and Information to be Seized and Searched

All information that constitutes evidence of a violation of Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce) committed on October 7, 2024, and December 10, 2024, involving unknown persons, including location information and identifying information as specified below.

1. **Verizon** shall provide responsive data in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information during the corresponding timeframe(s) listed in Attachment A, including records that identify:

   a. the unique identifiers for each wireless device that generated a Timing Advance "True Call" record for each location, including International Mobile Subscriber Identifiers ("IMSI"), International Mobile Equipment Identities ("IMEI"), and the make and model of the device;
   
   b. the starting and ending date/time of the connection along with the duration;
   
   c. for each communication with the network the tower and the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;
   
   d. the service type for the communication; and,
   
   e. the estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call" records.

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s)

identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3. It is anticipated that identifying information will be requested for devices whose characteristics meet the following criteria:

    a. Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.

4. However, it is noted that no subscriber information (including but not limited to name or phone number associated with the identifiers) or location information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.

5. Responsive records should be limited to include the above-requested information only for phone numbers that appear on two or more of the cellular towers during the above-specified dates and times identified in Attachment A.

6. Finally, law enforcement will not take further investigative steps with regard to identifiers collected from Verizon, including requesting grand jury subpoenas relating to those identifiers, except for identifiers related to devices that utilized cellular towers at more than one of the locations and times identified in Attachment A above.

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Apr 02, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. 25-M-339 (SCD)
                                              )
records and information associated with certain cellular towers )
("cell towers") and records generated by the cellular network )
that are in the possession, custody, and/or control of Verizon )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 844(i) | Arson |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Digitally signed by LUKE BARKER
Date: 2025.04.01 12:05:30 -05'00'

*Applicant's signature*

Luke Barker, Special Agent - ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 4-2-25

*Judge's signature*

City and state: Milwaukee, WI          Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Luke Barker, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") and records generated by the cellular network that are in the possession, custody, and/or control of the following company: Verizon, a cellular service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies of the information further described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since November 2015. Prior to that I was a Police Officer for the City of Aurora, CO. I have a total of 17 years of law enforcement experience. As an ATF Special Agent, I have participated in numerous investigations related to unlawful possession of firearms by convicted felons, unlawful use of firearms, firearms trafficking, drug trafficking, and arson.

3. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, evidence collection.

4. I have previously applied for and received search warrants related to cell site data and other related cellphone company records.

5. This affidavit is based upon my personal knowledge as well as information provided to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce) has been committed. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

**PROBABLE CAUSE**

7. On October 7, 2024, at approximately 4:31AM, the Milwaukee Police Department responded to a fire call for service at 1943 South 19th Street, Milwaukee, Wisconsin **("Location 1")**. The fire was specifically located at a detached garage behind the residence. In addition to the police, Milwaukee Fire Department had also been dispatched and were able to extinguish the fire before it made any significant damage.

8. After the fire was extinguished, Milwaukee Police Officers contacted a witness, hereinafter AW#1, who resides at 1949 South 19th St in Milwaukee. AW#1 informed officers that at approximately 4:20AM he heard a noise coming from the rear of his residence. AW#1 stepped outside and heard what sounded like a lighter being ignited and observed someone attempting to ignite a pile of wood near his garage. AW#1 stated the suspect then fled on foot southbound through the alley. AW#1 then stated his neighbors' garage was on fire and he contacted the Police.

9. An origin and cause investigation was conducted by Lead Fire Investigator Lieutenant A. Scott of the Milwaukee Fire Department. Based on his investigation, Scott classified the fire as incendiary with the probable area of origin to be the garbage cans near the detached garage. Scott estimated the damage caused by the fire to be approximately $429.

10. The residence at 1943 S. 19th St **("Location 1")** is a rental property managed by the leasing company, Affordable Rental Associates, LLC, and owned by AB2, LLC, thus affecting interstate commerce.

11. On December 3, 2024, at approximately 12:39AM, the Milwaukee Police Department responded to a fire call for service at 1942 South Congo Avenue, Milwaukee, Wisconsin **("Location 2")**. The fire was specifically located at a detached garage behind the residence. In addition to the police, Milwaukee Fire Department had also been dispatched and were able to extinguish the fire before it made any significant damage.

12. After the fire was extinguished, Milwaukee Police Officers contacted a witness, hereinafter AW#2 who resides at 1946 South Congo Avenue in Milwaukee. AW#2 informed officers that they first observed the fire at their neighbors' garage at approximately 12:18AM before calling 911. AW#2 informed MPD Officers that they had video surveillance cameras on the front and rear of the residence and allowed Officers to download a copy of the recorded footage. I was able to view the recorded video surveillance from the rear camera obtained from 1946 South Congo Ave and observed the following.

13. At approximately 11:56PM, on December 2, 2024, the rear camera records the light emitting from the fire behind the garage and glowing against the fence in the alleyway. As the light brightens, the suspect is captured emerging from behind the garage and walks south down the alley. The suspect is wearing red sweatpants and a red hooded sweatshirt. The suspect walks from

3

the alley into the backyard of 1925 South Winona Lane and appears to be watching the fire. At approximately 11:58PM the suspect walks back towards 1942 South Congo Avenue and disappears behind the garage near the fire. At approximately 11:59PM the suspect is seen walking back through the alley into the backyard of 1925 South Winona Lane. The suspect is seen in the backyard of 1925 South Winona Lane watching as the fire intensifies. At approximately 12:04AM the suspect leaves 1925 South Winona Lane and walks south down the alley. At approximately 12:10AM the suspect is seen again walking northbound through the alley and disappears behind the garage near the fire. At approximately 12:14AM the suspect reemerges from behind the garage and walks southbound down the alley. At 12:15AM the suspect is seen walking northbound through the alley and carrying what appears to be carboard boxes. The suspect disappears behind the garage near the fire with the two items in his hands. Approximately 1 minute later, the light from the fire intensifies.

14. An origin and cause investigation was conducted by Lead Fire Investigator Lieutenant A. Scott of the Milwaukee Fire Department. Based on his investigation, Scott classified the fire as incendiary with the probable area of origin to be the exterior detached garage and garbage cans. Scott estimated the damage caused by the fire to be approximately $161.

15. The residence at 1942 S. Congo Ave **("Location 2")** is owned and occupied by the victim, and thus does not affect interstate commerce. However, due to the fact that suspect in this arson is likely the same suspect in the other arsons described in this affidavit, any information from this location could help assist in the identification of the suspect.

16. On December 10, 2024, at approximately 2:52AM, the Milwaukee Police Department responded to a fire call for service at the adjacent locations of 1960 South 24th Street **("Location 3")** and 2318 West Rodgers Street **("Location 4")**, both located in Milwaukee,

Wisconsin. The fire was specifically located at a detached garages behind the residences. In addition to the police, Milwaukee Fire Department had also been dispatched and were able to extinguish the fire.

17. After the fire was extinguished, Milwaukee Police Officers contacted a witness, hereinafter AW#3, who resides at 2312 West Rodgers Street in Milwaukee. AW#3 informed officers that they were awaken by sirens. When AW#3 looked out her window she observed fire trucks in the parking lot near a burning garage. AW#3 also stated she observed a Hispanic male dressed entirely in red with a hood and ski mask walking in the alley while the fire department was extinguishing the fire.

18. MPD Officers were able to make contact with AW#4, who resides at 1936 S.24th St. AW#4 informed MPD Officers she had video surveillance cameras in the rear of the residence and allowed Officers to download a copy of the recorded footage. I was able to view the recorded video surveillance from the camera obtained from 1936 South 24th St and observed the following.

19. At approximately 2:30AM a suspect in red sweat pants, a red hooded sweatshirt and black ski mask is seen walking past 1936 South 24th St southbound towards 1960 South 24th St. At approximately 2:33AM, the suspect is seen dragging a garbage can across the alley towards the detached garage at 1960 South 24th St. At approximately 2:35AM, the suspect is seen standing over the garbage can near the detached garage at 2318 West. Rodgers Street. A flame appears and continues to intensify. Approximately 20 seconds later, the suspect is seen walking over to the garbage can near the detached garage at 1960 South 24th Street. After a few seconds, a second flame appears.

20. An origin and cause investigation was conducted by Lead Fire Investigator Lieutenant A. Scott of the Milwaukee Fire Department. Based on his investigation, Scott classified

5

the fires at both garages as incendiary with the probable area of origin to be the garbage cans that were moved to the two detached garages. Scott estimated the damage caused by the fires to be approximately $9,149.

21. 1960 S. 24th St **("Location 3")** is owned and occupied by the victim, and thus does not affect interstate commerce. However, due to the fact that suspect in this arson is likely the same suspect in the other arsons described in this affidavit, any information from this location could help assist in the identification of the suspect.

22. The residence at 2318 W. Rodgers St **("Location 4")** is a rental property owned and managed by person not living at the residence, thus affecting interstate commerce.

23. Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

24. In my training and experience, I have learned that Verizon is a company that provides cellular communications service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it. Additionally, cellular service providers also capture historical location data that is generated and derived from a cellular device's interaction with the cellular network. This information may include but not be limited to a cellular device's estimate distance

6

from a particular cell tower and the provider's network derived location of the device in latitude and longitude.

25. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

26. Based on my training and experience, I know that cellular providers, such as Verizon, routinely and in their regular course of business maintain historical cell-tower log information, including records identifying wireless communications that were transmitted through a particular cell tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device that sent or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the cell tower(s) that handled the communication as well as the "sectors" (i.e. the faces of the towers) that received a radio signal from the locally served wireless device; and the type of communication transmitted (such as phone call or text message).

7

27. Furthermore, cellular providers such as Verizon, in their regular course of business maintain certain types of location data associated with a cellular device based on that cellular device's interaction with the cellular network. For these interactions with the cellular network these records may include unique identifiers for the wireless device that interacted with the network ("the locally served wireless device'); the date, time and duration of the interaction with the network; the cell tower and sector (i.e. face of the tower) that was involved; the estimated distance from the tower and sector that the cellular device was located; and the estimated latitude and longitude of the cellular device. The aforementioned location information is often contained within Timing Advance data, also known as True Call, that is captured and controlled by cellphone service providers.

28. Based on my training and experience and the above facts, information obtained from cellular service providers such as Verizon reveal cell towers (and, where applicable, sector) that were used and the estimated location information (the estimated distance from the tower and sector and estimated latitude and longitude) of a given cellular device to engaged in a particular communication or interaction with the cellular network can be used to show that the device was in the general vicinity of the cell tower or an estimated location at the time the communication or network interaction occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of:

    a. Location 1 – 1943 South 19th Street, Milwaukee, Wisconsin on October 7, 2024, from approximately 4:10 a.m. (CST) – 4:50 a.m. (CST); and

    b. Location 2 – 1942 South Congo Avenue, Milwaukee, Wisconsin on December 2 -3, 2024, from approximately 11:30 p.m. (CST) – 12:20 a.m. (CST); and

    c. Location 3 – 1960 South 24th Street, Milwaukee, Wisconsin, on December 10, 2024, from approximately 2:10 a.m. (CST) – 2:50a.m. (CST); and

8

d. Location 4 – 2318 West Rodgers Street, Milwaukee, Wisconsin, on December 10, 2024, from approximately 2:10 a.m. (CST) – 2:50a.m. (CST).

29. Probable cause exists to believe that the records requested contain evidence related to identifying the unknown individuals who committed violations of Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce).

## AUTHORIZATION REQUEST

30. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

31. I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

32. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

# ATTACHMENT A

## Property to Be Searched

This warrant applies to a Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates and times.

1. Location #1

   GPS Coordinates:  43.00932508789193, -87.9373239255281

   Date: October 7, 2024                           Time: 4:10 a.m. (CST) to 4:50 a.m. (CST)

2. Location #2

   GPS Coordinates:  43.00958289735095, -87.93576192748301

   Date: December 2 - 3, 2024                      Time: 11:30 p.m. (CST) to 12:20 a.m. (CST)

3. Location #3

   GPS Coordinates:  43.009049792507355, -87.94352197557707

   Date: December 10, 2024                         Time: 2:10 a.m. (CST) to 2:50 a.m. (CST)

4. Location #4

   GPS Coordinates: 43.00892718673681, -87.94297268238635

   Date: December 10, 2024                         Time: 2:10 a.m. (CST) to 2:50 a.m. (CST)

## ATTACHMENT B

### Items and Information to be Seized and Searched

All information that constitutes evidence of a violation of Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce) committed on October 7, 2024, and December 10, 2024, involving unknown persons, including location information and identifying information as specified below.

1. **Verizon** shall provide responsive data in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information during the corresponding timeframe(s) listed in Attachment A, including records that identify:

   a. the unique identifiers for each wireless device that generated a Timing Advance "True Call" record for each location, including International Mobile Subscriber Identifiers ("IMSI"), International Mobile Equipment Identities ("IMEI"), and the make and model of the device;
   
   b. the starting and ending date/time of the connection along with the duration;
   
   c. for each communication with the network the tower and the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;
   
   d. the service type for the communication; and,
   
   e. the estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call" records.

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s)

identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3. It is anticipated that identifying information will be requested for devices whose characteristics meet the following criteria:

    a. Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.

4. However, it is noted that no subscriber information (including but not limited to name or phone number associated with the identifiers) or location information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.

5. Responsive records should be limited to include the above-requested information only for phone numbers that appear on two or more of the cellular towers during the above-specified dates and times identified in Attachment A.

6. Finally, law enforcement will not take further investigative steps with regard to identifiers collected from Verizon, including requesting grand jury subpoenas relating to those identifiers, except for identifiers related to devices that utilized cellular towers at more than one of the locations and times identified in Attachment A above.